# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) **ORDER DENYING DEFENDANT'S** |
| | ) **MOTION FOR MISTRIAL OR, IN** |
| vs. | ) **THE ALTERNATIVE, A NEW TRIAL** |
| | ) |
| | ) Case No. 1:11-cr-038 |
| Rodney Goodwin, | ) |
| Defendant. | ) |

Before the Court is the Defendant's "Motion for Mistrial or in the Alternative New Trial" filed on February 23, 2012. See Docket Nos. 42 and 44. The Government filed a response opposing the motions on February 27, 2012. See Docket No. 45. The Defendant did not file a reply brief. For the reasons set forth below, the Court denies the motion.

## I.     BACKGROUND

On February 9, 2012, after a three-day jury trial, the defendant, Rodney Goodwin, was found guilty of the offense of attempted transportation of a minor with the intent to engage in criminal sexual activity in violation of 18 U.S.C. §§ 2423(a) and 2423(e). See Docket No. 34. The trial was held in Bismarck, North Dakota.

Goodwin has moved for a mistrial pursuant to Rule 26.3 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial pursuant to Rule 33(b)(2) of the Federal Rules of Criminal Procedure. Goodwin contends the Government's questions of a witness regarding child pornography justify a mistrial. Goodwin also argues that the Court improperly instructed the jury on North Dakota law, Texas law, and federal law prohibiting the production of child pornography.

The Government contends that questions and evidence regarding child pornography were not improper. The Government states that the victim, J.B., testified that she and Goodwin had

conversations regarding making a pornographic video once she got to Texas. Exhibit No. 9, the summary of the internet communications between Goodwin and J.B., includes at least one mention by J.B. of making a pornographic video with Goodwin. The Government contends it was proper to ask Special Agent Randy Helderop a question regarding whether Goodwin would be violating federal law if he engaged in and videotaped a sexual act with J.B. in Texas when she was 17 years old. Nevertheless, Goodwin objected to the question and the Court sustained the objection. The Government also argues that the jury was properly instructed on North Dakota, Texas, and federal law.

## II. LEGAL DISCUSSION

Rule 26.3 of the Federal Rules of Criminal Procedure provides:

> Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.

Rule 26.3 is designed to reduce the possibility of an erroneously ordered mistrial which could produce adverse consequences. Rule 33(a) of the Federal Rules of Criminal Procedure provides:

> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

A trial court has broad discretion in deciding whether to grant a motion for a new trial. United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005) (citing United States v. Red Elk, 368 F.3d 1047, 1053 (8th Cir. 2004)). The Eighth Circuit has made it clear that motions for a new trial are generally disfavored and are to be granted only where a serious miscarriage of justice may have occurred. United States v. Rice, 449 F.3d 887, 893 (8th Cir. 2006). A prosecutor's question can result in a mistrial if it was improper and so offensive as to deprive the defendant of a fair trial. United States

2

v. Hale, 1 F.3d 691, 694 (8th Cir. 1993) (citing United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985)).

Goodwin contends that questions and jury instructions regarding child pornography prevented the jury from fairly evaluating the evidence. Instruction F-3 in the final jury instructions states the four elements of the crime of attempted transportation of a minor with the intent to engage in criminal sexual activity:

> One, the Defendant knowingly attempted to transport J.B. across a state line or national border;
>
> Two, the Defendant attempted to transport J.B. with the intent to engage in sexual activity with J.B.;
>
> Three, J.B. was under the age of eighteen (18) years and the Defendant knew, or reasonably should have known, that J.B. was under the age of eighteen (18) years; and
>
> Four, engaging in sexual activity with a person under the age of eighteen (18) years is the type of sexual activity that could result in a person being charged with a crime.

See Docket No. 38, p. 3. The Court also provided the following instruction titled "Types of Sexual Activity for Which a Person Can be Charged with a Criminal Offense":

**(a) NORTH DAKOTA LAW**

Section 12.1-20-05(2) of the North Dakota Century Code provides:

> An adult who solicits with the intent to engage in a sexual act with a minor under age fifteen or engages in or causes another to engage in a sexual act when the adult is at least twenty-two years of age and the victim is a minor fifteen years of age or older, is guilty of a class C felony.

**(b) TEXAS LAW**

Section 43.26 of the Texas Penal Code:

(a) A person commits an offense if:

(1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct; and

(2) the person knows that the material depicts the child as described by Subdivision (1).

(b) In this section:

. . .

(2) "Sexual conduct" [means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola].

(3) "Visual material" means:

(A) any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide; or

(B) any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method.

The Defendant could be criminally prosecuted for an offense under Texas law if sexual activity occurred or was intended to occur within the borders of the State of Texas. It should be noted that the age of consent to engage in sexual activity in Texas is seventeen (17).

**(c) FEDERAL LAW**

The Defendant could be charged with a crime under federal law if, while in Texas, he had J.B. engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct.

4

> 18 U.S.C. § 2251(a) provides that:
>
>> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct.
>
> Under federal law, a minor means any person under the age of eighteen (18) years. See 18 U.S.C. § 2256.

See Docket No. 38, pp. 4-6.

The record reveals that on July 18, 2010, J.B. (who was 16 years old) sent the following message to Goodwin via Mbuzzy.com, "NO im not egn0rin you! I havent had ne time alone! I love you! And its killing me n0t talkin 2 you! Ill try 2cal u s0on!" See Exhibit No. 9 (errors in original). On July 18 and 19, 2010, Goodwin responded:

> it\'s killing me too baby - all of this. Grandparents treating you like shit
>
> not talking to you
>
> John and what he took from us forever. All of it hurts so bad. And baby - I not gonna make it like this. I\'ll never last 15 months with it like this. WE HAVE GOT TO DO SOMETHING TO BE TOGETHER PERMANENTLY - RIGHT NOW
>
> Try Not! Do! Or Do Not! :) There is NO TRY baby - and I fucking NEED YOU - I don\'t know whats wrong with me - I have NEVER loved anyone so much in my LIFE! I LOVE YOU SO MUCH I CAN\'T THINK clearly or eat. John hurt me so bad I can\'t get hard
>
> I can\'t fantasize
>
> John and what he took from us forever. All of it hurts so bad. And baby - I not gonna make it like this. I\'ll never last 15 months with it like this. WE HAVE GOT TO DO SOMETHING TO BE TOGETHER PERMANENTLY - RIGHT NOW
>
> . . .

I\'m falling apart baby. John ruined my life. I don\'t think we\'re gonna make it baby :(( You don\'t love me enough to wait. Or even call me. You\'ll never tell your g-parents to go to hell and be with me. And I can\'t wait 15 months while John and others steal the only woman I have ever loved. God this is painfull

3 days no phone and it feels like 10 years. [J] I can\'t. :( I can\'t live like this. How can God bring me a LOVE like this and deny me having it. And worse. Give it away to John. I can\'t baby.

I had (have maybe) for you the ultimate in TRUE LOVE RELATIONSHIP. A life full of SECURITY in KNOWING that your TRULY LOVED. A life full of cock with your true love standing with you. I still want that so bad!!! But your killing it. John and you tried to kill that? Why? You dont have the right to hurt like that. :( WHERE THE FUCK ARE YOU?????

So your not calling tonite either I see. So pretty much you choose them - instead of me. Fuck. How will I ever get over you. I\'ve looked for you as many years as you\'ve been alive. And then you make it even MORE than I was looking for by being a virgin and loving me. And now you\'ll tear it apart

brick by brick. Causing the worst pain Ive ever felt. Thanks. For shooshing abuse

John and EVERYTHING before ME!!!!!!!!!!!!! bye

I LOVE YOU SO MUCH. I won\'t let these people stop us baby. I hope you\'ll marry me. I\'m coming soon for you. They can\'t stop me.

See Exhibit No. 9 (errors in original).

> On July 19, 2010, Goodwin sent the following messages to J.B.:
>
> I fucking lOVE YOU SO MUCH [J.]! God I do baby!
>
> God baby - where are you? I MISS YOU so bad
>
> . . .
>
> Baby? Tell me honestly.... Can you handle this? Days on end without me? I love you. and this total communication blackout is really bad. Are you in love with someone else now? Is it you not calling me? or is it your grandparents stopping you? Cuz this is starting to suck. It won\'t stop me from loving you. But fuck it\'s making life difficult. All they are going to do is piss me off to the point where I drive up there and get you. They not gonna stop us. Will you please tell me whats going on before I star calling your phone and drive up there. I love you Baby. So much

See Exhibit No. 9 (errors in original). Goodwin sent the following message to J.B. on July 20, 2010, "I dunno how you can go this long without talking to each other. I\'m going nuts. You love someone else - don\'t you :(" See Exhibit No. 9 (errors in original).

On July 23, 2010, Goodwin sent the following messages to J.B.:

I've finally come to terms with the virginity issue baby. And I can handle it. My love for you is so over whelming that it just can\'t matter. I LOVE YOU [J.] I LOVE you like no one ever before. I hope to hear from you soon my wife. I love you baby.

I dont care whats happened

as long as you LOVE me. (I do care

but ya know what I mean) I LOVE YOU [J.] I won\'t let anything take that away. Unless you don\'t love me and you want me to go away. Otherwise NOTHING will stop my love for you baby

I\'m dyin without you baby. :(( Love You so much! Wher are you? Why won\'t you contact me. I been calling your phone

but straight to voicemail. Why baby? Where have you gone?

See Exhibit 9 (errors in original).

On July 25, 2010, Goodwin sent the following messages to J.B.:

I haven\'t cum in almost two weeks. I can\'t get hard for anyone else. I\'ve told everyone to fuck off and that I\'m in love. I LOVE YOU so much [J.]! I pray your still my girl. cuz I here waiting for you :((

God damn this is so hard to handle. Baby where the hell are you? What have they done to you? Pretty soon I\'m gonna come to ND looking for you. PLEASE CONTACT ME !

I Love You [J.]!

See Exhibit No. 9 (errors in original).

On October 16, 2010, Goodwin sent the following messages to J.B.:

Love you baby. But I am done with this shit. I am NOT continuing in TEXT to organize this. Not one more second. I have 4 - 6 HOURS a DAY for 2 weeks on this fucking bullshit. NO MORE&gt;

7

> SO STEAL THE FUCKING CAR&gt; and leave it in bismarck. I don't care anymore. I&quot;M DONE!.
>
> Take th cra. Go get the fucking green dot card. Call me and get Money. Get on bus or airplane or train or walk I dont give a fuck. JUST LEAVE&gt; Your trying to sneak around these MASTER SPIES of so called grandparents. JUST TAKE THE FUCKING CAR AND LEAVE!!!!!!!!!!!!!!!!!!!!

<u>See</u> Exhibit No. 9.

Exhibit No. 9 reveals numerous graphic communications between Goodwin and J.B. of a sexual nature. The communications primarily focus on Goodwin engaging in sexual activity with J.B. once the two are able to get together to consummate their internet "relationship." The jury could reasonably conclude from this evidence, as well as the volumes of other internet communications, hours of telephone communications, J.B.'s trial testimony, and reasonable inferences drawn from such evidence, that Goodwin had considered coming to North Dakota and would likely have engaged in or attempted to engage in sexual activity with J.B. in North Dakota or Texas. Therefore, it was appropriate to instruct the jury on the applicable law in North Dakota that Goodwin could have been charged with as a crime, in violation of 18 U.S.C. §§ 2423(a) and 2423(e).

J.B. also testified that she and Goodwin had discussions about videotaping themselves engaging in sexual activity once she arrived in Texas. On July 5-7, 2010, Goodwin sent the following messages to J.B.:

> I miss you baby. And I watched a pron that drove me nuts. I am so lucky to have you. Such a slut. I know I\'ll see you doing things like that in that video. You just LOVING cock. I miss you daughter.
>
> What happened? They find your phone again or again baby ? – I LOVE YOU :x and MISS YOU
>
> I LOVE you [J.] So much.

See Exhibit No. 9 (errors in original). On July 7, 2010, J.B. responded, "Mmmm daddy. I don't have a phone anymore. And i cant wate 2 make my first porn." See Exhibit No. 9 (errors in original). Goodwin argued to the jury that J.B. was simply not a credible witness. However, that determination is one to be made by the jury rather than the court. It is well-established that "[t]he jury has the sole responsibility to resolve conflicts or contradictions in testimony." United States v. Aldridge, 664 F.3d 705, 715 (8th Cir. 2011) (citing United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010)).

If Goodwin had videotaped he and J.B. (age 16) engaged in sexual activity in Texas, he would have violated Texas Penal Code § 43.26 and 18 U.S.C. § 2251(a). Therefore, the conduct would constitute "sexual activity that could result in a person being charged with a crime" in violation of the fourth element of the offense. The Court finds that the jury could reasonably have concluded from the evidence, or from reasonable inferences drawn from the evidence, that Goodwin would likely have engaged in such sexual activity in violation of the fourth element. The Court finds that the Government's question directed to Special Agent Helderop regarding child pornography, which was objected to and never answered, did not deprive Goodwin of a fair trial. Further, the Court's jury instructions regarding child pornography statutes in Texas and under federal law did not deprive Goodwin of a fair trial. It is clear from the evidence presented at trial that Goodwin and his 16-year-old internet "fiancee" had discussed the making of a pornographic video when she got to Texas. Such conduct would constitute sexual activity that could result in a person being charged with a crime.

A related issue concerning the jury instructions was presented in United States v. Patten, 397 F.3d 1100 (8th Cir. 2005). The defendant, who resided in Moorhead, Minnesota, engaged in online communications with a police officer in West Fargo, North Dakota, who was posing as a 16-year-old girl named "Sarah." The defendant discussed engaging in sexual activity with "Sarah." The

9

defendant and "Sarah" also made arrangements to meet in person. In North Dakota, sexual conduct between the defendant and "Sarah" would be illegal, but in Minnesota it would be legal because the age of consent is 16. A female dispatcher posed as "Sarah" and spoke with the defendant on the telephone. She asked him to meet outside a grocery store in West Fargo, North Dakota. When the defendant arrived at the location he was arrested. He was charged with attempting to persuade any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).

The Court provided the following instruction to the jury:

> The United States must prove that the defendant intended to persuade or attempted to persuade a minor to engage in an unlawful act. . . . The defendant could only be criminally prosecuted for an unlawful sexual act under North Dakota law if the sexual activity occurred or was intended to occur within the borders of the state of North Dakota.

Patten, 397 F.3d at 1103. The Eighth Circuit explained further:

> As the district court's instruction accurately stated, the intent that violates § 2422(b) is the intent to persuade a minor to engage in illegal sexual activity. See United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000) (§ 2422(b) criminalizes "the attempt to persuade, not the performance of the sexual acts themselves"), cert. denied, 532 U.S. 1009 (2001). Thus, Patten's conviction must be affirmed if the evidence was sufficient to permit a reasonable jury to infer that he intended to persuade "Sarah" to engage in sexual activity in North Dakota. The jury could resolve that issue of fact without having to decide the additional question of where Patten in fact intended the sexual activity to occur.

Id.

The district court in Patten allowed the parties to argue to the jury whether the defendant had undertaken a substantial step towards persuading "Sarah" to engage in illegal sexual activity. The parties were also allowed to argue whether the sexual activity was intended to occur in North Dakota or Minnesota. The Eighth Circuit found this was proper, noting the district court's "wide discretion in crafting appropriate jury instructions." Id. at 1104 (quoting United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001), cert. denied, 534 U.S. 919 (2001)).

In this case the jury instructions were crafted in a similar fashion. The jury was instructed on the applicable laws of North Dakota, the laws of Texas, and federal law under which Goodwin could have been charged with a crime had he engaged or attempted to engage in sexual activity with J.B., a minor. The jury was specifically informed that the age of consent in Texas is 17. The parties were afforded the opportunity, and great latitude, to argue to the jury which jurisdiction's laws should apply and whether Goodwin had committed a substantial step in attempting to transport J.B. across state lines for the purpose of engaging in unlawful sexual activity. The parties were also given great latitude to argue whether any such sexual activity was intended to occur in North Dakota or Texas. For the reasons outlined by the Eighth Circuit Court of Appeals in Patten, the Court finds that the jury instructions properly informed the jury of the applicable law. The Court further finds that neither questions raised about child pornography nor the jury instructions deprived the Defendant of a fair trial.

### III.    CONCLUSION

For the reasons set forth above, the Defendant's "Motion for Mistrial or in the Alternative New Trial" (Docket Nos. 42 and 44) is **DENIED.**

Dated this 13th day of March, 2012.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court